UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MODU JAWARA,

                Petitioner(s),

    v.

TODD BLANCHE, et al.,

                Respondent(s).

CASE NO. C26-1252-KKE

ORDER ON AMENDED HABEAS PETITION

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. No. 1) and a subsequent amended habeas petition (Dkt. No. 14). While released on an Order of Supervision ("OSUP"), Petitioner was detained in August 2025 during a scheduled check-in appointment with United States Immigration and Customs Enforcement ("ICE"). Dkt. No. 14 at 5–6. Petitioner contends that his re-detention violated his right to due process because ICE failed to follow its own regulations in effectuating his re-detention. *Id.* at 14–16. Petitioner requests immediate release, as well as an order enjoining his re-detention without adequate notice and an opportunity to be heard. *Id*. at 16–17. The Government[1] opposes the petition, stating that ICE provided Petitioner an informal interview and opportunity to contest the reasons for his re-detention, as required by its regulations, and that Petitioner is not entitled to further process. Dkt. No. 18.

---

[1] This order refers to the Federal Respondents—all Respondents except Bruce Scott—generally as "the Government."

ORDER ON AMENDED HABEAS PETITION - 1

For the following reasons, the Court finds that Petitioner's re-detention violated ICE's regulations because ICE failed to notify him of the actual reasons for his re-detention. Instead, ICE told Petitioner that the government of his home country was currently considering his case for the issuance of a travel document when, in fact, ICE had not yet submitted a travel document request and would not do so for several months. Accordingly, the Court will grant the habeas petition and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner, a citizen of Sierra Leone, has been in the Country for over 25 years. Dkt. No. 10 ¶ 4. He states that, during Sierra Leone's civil war, Revolutionary United Front guerillas killed his mother and father and imprisoned and tortured Petitioner and his sibling. Dkt. No. 14 at 2–5. In January 2001, Petitioner fled to the United States, where he used false identification documents to gain admission. Dkt. No. 10 ¶ 4. Later that year, he applied for asylum with United States Citizenship and Immigration Service ("USCIS"). *Id.* Petitioner has no criminal history in Sierra Leone or the United States. Dkt. No. 14 at 4.

USCIS ultimately denied his application and issued him a notice to appear in immigration court for removal proceedings. Dkt. No. 10 ¶ 5. In January 2007, an immigration judge ("IJ") ordered Petitioner removed. *Id.* ¶ 6. Petitioner unsuccessfully appealed that order and then petitioned the Ninth Circuit for review. *Id.* ¶¶ 8–9. Months after the Ninth Circuit dismissed his petition for review, ICE arrested Petitioner and detained him in anticipation of removal to Sierra Leone. *Id.* ¶ 10. However, on March 27, 2013, ICE concluded it could not procure a travel document for Petitioner from Sierra Leone and released him pursuant to an OSUP. *Id.* ¶ 11, Dkt. No. 11-2.

In the years following his release, Petitioner obtained employment authorization, complied with the conditions of his release, and met his wife—a United States citizen. Dkt. No. 14 at 5. They have a son and daughter who are also both citizens. *Id.*

On August 15, 2025, during a regularly scheduled check-in, ICE re-detained Petitioner and issued him a letter titled "Notice of Revocation of Release." Dkt. No. 14 at 6, Dkt. No. 10 ¶ 12, Dkt. No. 11-3. That letter informed Petitioner that his OSUP had been revoked due to "changed circumstances in your case." Dkt. No. 11-3 at 2. In particular, it stated, "ICE has determined that you can be removed from the United States[,]" and explained, "[y]our case is currently under review by the government of Serria [sic] Leone for the issuance of a travel document." *Id.* ICE states that it "conducted an interview with Petitioner" after handing him the letter, "giving him a chance to explain why he should not be detained." Dkt. No. 10 ¶ 12. The letter is dated August 15, 2025—the same date as Petitioner's arrest. *Id.*

In fact, ICE had not submitted a request for a travel document to the government of Sierra Leone and would not do so for another five months after it detained Petitioner and served him with the revocation notice. Dkt. No. 10 ¶ 14. Ultimately, a month and a half after receiving the request from ICE (and more than six months after ICE detained Petitioner), Sierra Leone issued a travel document for Petitioner with an expiration date of March 12, 2027. *Id.* ¶ 15, Dkt. No. 11-4.

Shortly after being detained, Petitioner filed a motion to reopen his removal proceedings to remand the case to the BIA so that he can seek adjustment of status. Dkt. No. 14 ¶ 12. That motion remains pending. *Id.*

On April 10, 2026, Petitioner, proceeding *pro se*, filed his initial habeas petition, a motion for expedited briefing, and a motion for a temporary restraining order ("TRO"). Dkt. Nos. 1, 2. The Court provisionally granted the TRO motion, granted in part the motion for expedited briefing, and referred Petitioner's case to the Office of the Federal Public Defender, which accepted

ORDER ON AMENDED HABEAS PETITION - 3

appointment as Petitioner's counsel.  Dkt. Nos. 8, 13.  Petitioner filed an amended habeas petition.  Dkt. No. 14.  The Government filed a return.  Dkt. No. 18.  And Petitioner filed a traverse.  Dkt. No. 19.  The amended habeas petition is now ripe for the Court's consideration.

## II.   ANALYSIS

### A.   Legal Authority

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Where a procedure is set forth in an agency's regulations in order to protect a fundamental constitutional right such as due process, and the agency fails to follow that regulatory procedure, courts have found that this failure constitutes a due process violation.  *See, e.g.*, *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("It is well-established that government agencies are required to follow their own regulations. … Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in

ORDER ON AMENDED HABEAS PETITION - 4

revoking release, the detention is unlawful and the petitioner's release must be ordered.'" (quoting *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025))).

**B.    The Government's Failure to Follow Its Regulations in Re-detaining Petitioner Violates His Constitutional Right to Due Process.**

Noncitizens subject to a removal order, such as Petitioner, may be released from detention under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.  These regulations also describe the procedure by which release can be revoked if the noncitizen violates a condition of release, if there is a change in circumstances that makes it significantly likely the noncitizen will be removed "in the reasonably foreseeable future," or if revocation is in the public interest.  8 C.F.R. §§ 241.4(l), 241.13(i).

These regulations provide that "[u]pon revocation" of an OSUP, a noncitizen "will be notified of the reasons for revocation of his or her release" and will be afforded an initial informal interview "promptly after his or her return to … custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1), 241.13(i).  During that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision."  8 C.F.R. § 241.13(i).

Here, the Government failed to comply with these requirements by misinforming Petitioner of the purportedly "changed circumstances" that made his removal reasonably foreseeable.  *See* 8 C.F.R. § 241.13(i)(2); Dkt. No. 11-3 at 2.  ICE informed Petitioner that Sierra Leone was "currently" reviewing his case "for the issuance of travel documents[.]"  Dkt. No. 11-3 at 2.  In fact, ICE had not yet requested a travel document and would not do so for another five months.  Dkt. No. 10 ¶ 14.  Not only did this violate the requirement to notify Petitioner "of the reasons for revocation of his … release[,]" it also undermined Petitioner's "opportunity to respond to the

ORDER ON AMENDED HABEAS PETITION - 5

reasons stated in the notification" or to submit "evidence or information" undermining ICE's claim that removal was likely to occur soon.  8 C.F.R. § 241.13(i)(3).  When the Government misrepresents its progress toward effectuating a noncitizen's removal, the noncitizen has no choice but to take it at its word.  In this case, the Government's misleading notice deprived Petitioner of any meaningful opportunity to rebut the reasons for his re-detention.

The Government acknowledges that 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide the required due process protections for noncitizens released on an OSUP.  But it argues that any claim that ICE violated the regulations is nevertheless moot because ICE has now obtained a travel document from Sierra Leone and thus has good reason to believe Petitioner can be removed in the reasonably foreseeable future.[2]  Dkt. No. 18 at 7–8.  "A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)).  Because Petitioner remains in custody pursuant to a process that violated both ICE regulations and due process, his claims are not moot.  *See United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018) (finding appeal remained live where success "could alter the length or conditions of" defendant's custody).

As multiple courts in this District have held, "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation omitted).  Thus, the Government's confidence that it can expeditiously remove Petitioner is no substitute for the process set forth in regulations that are

---

[2] The Government states that "[t]his Court has already found that Petitioner's due process claims concerning his detention are moot" and cites "Order, at 6–7." Dkt. No. 18 at 9.  This Court has made no such finding.  It appears this reference is in error.

ORDER ON AMENDED HABEAS PETITION - 6

intended to ensure Petitioner has notice and an opportunity to respond to the reasons justifying his re-detention. *See Yang v. Scott*, No. 2:26-CV-00469-JNW, 2026 WL 632661, at *4 (W.D. Wash. Mar. 6, 2026) ("Confidence is no substitute for process. It is process that determines whether confidence is justified.").[3] Petitioner presents a live issue—whether his current detention stemmed from a constitutionally deficient process—and he retains a legally cognizable interest in securing his release. Accordingly, his claims remain live.

In sum, the Court concludes that Petitioner's detention is unlawful and violates his constitutional right to due process. *See Constantinovici,* 806 F. Supp. 3d at 1164. The appropriate remedy for the Government's violation of his rights is release, "returning [Petitioner] to the status quo before his release was improperly revoked." *Yang*, 2026 WL 632661, at *5 (collecting cases); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [petitioner], his due process rights were violated and he is entitled to release.").

**C.    The Court Will Grant In Part Petitioner's Request for Injunctive Relief.**

Petitioner also seeks prospective injunctive relief adjacent to his habeas petition seeking protection in the event ICE attempts to re-detain him. Dkt. No. 14 at 17. Specifically, he requests an order requiring the Government to hold a hearing before a neutral decisionmaker before re-detaining him in the future and enjoining the Government from re-detaining him without giving him two months to leave on his own and, in any event, without having made concrete arrangements for a flight to Sierra Leone. *Id.*

---

[3] The Government attempts to distinguish *Yang* because the petitioner in that case had been granted a stay of removal by the immigration court. But *Yang* does not turn on this distinction. Rather, the petitioner in *Yang* was entitled to release because the Government failed to provide him the required notice and informal interview and the Government's post-detention evidence that it obtained a travel document did not excuse its deficient re-detention process. *Yang*, 2026 WL 632661, at *4–5. The Court is persuaded by *Yang*'s reasoning that a claim challenging a deficient process for revoking an OSUP is not mooted when ICE later obtains a travel document.

ORDER ON AMENDED HABEAS PETITION - 7

Under the particular circumstances of this case, the Court finds that injunctive relief is warranted to effectuate this order and prevent further violations of Petitioner's due process rights. Petitioner has shown that he is likely to be re-detained in the future—indeed, the Government has procured a travel document in Petitioner's name. And ICE's prior misrepresentation regarding its progress in effectuating his removal belies the notion that ICE could serve as a neutral decisionmaker in a future custody determination. Petitioner's detention without adequate process has already caused irreparable injury. And Petitioner has no adequate remedy against the Government to compensate for his unconstitutional arrest. The balance of hardships favors Petitioner, who has lived in the United States for 25 years and is the sole income-earner for his United States citizen wife and children. Dkt. No. 14 at 5–6. Finally, the public interest is unquestionably served when the Government adheres to the constitution and its own regulations.

Under similar circumstances, courts in this District have held that, prior to any re-detention, due process requires that a noncitizen receive notice of the reasons for the re-detention and an opportunity to contest those reasons in a hearing before an IJ. *See Yang*, 2026 WL 632661, at *5; *Acosta-Ginori v. Bondi*, No. 2:25-CV-02649-RAJ, 2026 WL 221509, at *4 (W.D. Wash. Jan. 28, 2026) (citing cases). Accordingly, the Court will prohibit the Government from re-detaining Petitioner without notice and a meaningful opportunity to be heard before a neutral decisionmaker. The Court denies for lack of supporting authority Petitioner's request for an order requiring the Government to make concrete travel arrangements or provide a two-month self-departure period prior to re-detention.

### III.  CONCLUSION

The Court GRANTS Petitioner's amended habeas petition:

1. The Government is ORDERED to release Petitioner from custody under the conditions of his most recent order of supervision **no later than June 24, 2026**.

ORDER ON AMENDED HABEAS PETITION - 8

2.    **No later than June 25, 2026,** the Government must provide the Court with a declaration confirming that Petitioner has been released from custody.

3.    The Government may not re-detain Petitioner unless (a) the Government provides Petitioner written notice of the basis for the proposed re-detention in advance and (b) Petitioner is afforded a pre-detention hearing before an immigration judge in which he may contest the reasons for his re-detention.

4.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 23rd day of June, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON AMENDED HABEAS PETITION - 9